UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————— x

CHIKEZIE OTTAH,
                    Plaintiff,
        -against-                                      10 Civ. 7296 (CM)

FIRST MOBILE TECHNOLOGIES,
                    Defendant.

——————————————————————————— x

DOCUM... :
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/17/12

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

Plaintiff Chikezie Ottah ("Plaintiff" or "Ottah") commenced this patent infringement action *pro se* on September 22, 2010. Ottah alleges that defendant First Mobile Technologies' ("Defendant" or "FMT") product, a vehicular computer docking station (the "Accused Product"), infringes Ottah's patent, US 7,152,840 B2 (the "'840 Patent"). FMT has moved for summary judgment on the ground of noninfringement. For the reasons discussed below, FMT's motion is GRANTED.

I. **Background**

    a. **The '840 Patent**

The '840 Patent was filed on April 24, 2003 and issued on December 26, 2006. The '840 Patent describes "a book holder removably attachable to a vehicle or structure such as a stroller, walker, wheelchair or car seat for mobile applications." Declaration of Cosmin Maier ("Maier Decl.") Ex. 1 at 1 (Abstract). The purpose of the '840 Patent is to provide a platform to support books which can be attached easily to a moving object. Id.

1

Copies (mailed) faxed/handed to counsel on  2/17/12

As is common in the patent process, Ottah's '840 Patent went through some back-and-forth with the U.S. Patent & Trademark Office (the "USPTO") before approval. In at least its second communication rejecting Ottah's patent application, the USPTO focused, in addition to formulation problems, on the similarity of the product to various other patents, including a book-holding platform which attaches permanently to a bed and several other forms of book support platforms which can be bolted to various services. Maier Decl. Ex. 2 at 6-9.

In response to this action, and with the assistance of an attorney, Ottah and his colleagues filed a Request for Continued Examination of their application on July 25, 2005 (Maier Decl. Ex. 4). Therein, Ottah revised his application to meet the formulation requirements as directed by the USPTO. In addition, in order to address the USPTO's concerns about the novelty of the invention in light of prior patents, Ottah emphasized the product's "clasp" mechanism, which, he stressed, enables it to be attached to any mobile vehicle without the use of tools. He argued that "the use of adjustable, resilient clip arms on the clasp for clasping the book holder to the movable vehicle providing quick removal and attachment without tools, [as well as certain other features,] is not obvious in light of the prior art." Maier Decl. Ex. 4 at 22. The USPTO eventually granted the revised application and issued Ottah the '840 Patent on December 26, 2006.

The sole claim of the '840 Patent is as follows:

1. A book holder for removable attachment, the book holder comprising:

> a book support platform, the book support platform comprising a front surface, a rear surface and a plurality of clamps, the front surface adapted for supporting a book, the plurality of clamps disposed on the front surface to engage and retain the book to the book support platform, the rear surface separated from the front surface;

> a clasp comprising a clip head, a clip body and a pair of resilient clip arms, the clip arms adjustably mounted on the clip head, the clip head attached to the clip body; and

2

> an arm comprising a first end and a second end and a telescoping arrangement, the clasp on the first end, the second end pivotally attached to the book support platform, the telescoping arrangement interconnecting the first end tob [sic] the second end, the clasp spaced from the book support platform wherein the book holder is removably attached and adjusted to a reading position by the telescoping arrangement axially adjusting the spaced relation between the book support platform and the clasp and the pivotal connection on the book support platform pivotally adjusting the front surface with respect to the arm.

Maier Decl. Ex. 1 at 6;13-38.

The specification of the '840 Patent – the description accompanying the above claim as part of the official document on file with the USPTO – provides greater detail on the invention. In describing the tool-free clasp mechanism and its importance to the invention, Ottah states in the specification that "The present invention relates generally to a removable book holder assembly . . .," Maier Decl. Ex. 1 at 1;6-7; that "The prior art does not accommodate easy and quick attaching the book support onto a structure for mobile use. Thus there is a need for an improved Book Holder that is quickly and easily clipped to a mobile vehicle . . .," id. at 1;55-58; and that "It is an object of the present invention to provide a book holder that can be easily and removably attached to and removed from a bar or portion of the mobile vehicle without tools," id. at 1;64-67. Regarding the invention's uses, the specification also mentions that "The book platform may also be used to support such items as audio/video equipment, PDAs, or mobile phones, cameras, computers, musical instruments, toys, puzzles and games." Id. at 5;35-38. The claim section, however, only discusses use with books. See id. at 6;14-38.

The '840 Patent's file also includes various drawings, which give additional context to the invention. While, like the specification, these drawings do not constitute part of the official claim of the patent, they do serve to help officials and later inventors understand exactly what the

3

invention entails. According to Ottah, these drawings indicate that the clasp mechanism also can be configured like a base to attach to the floor of a mobile vehicle. Pl.'s Mem. in Opp. to Def. Motion for Summary Judgment ("Ottah Memorandum") at 21.[1] In the actual claim section of the '840 Patent, however, Ottah discusses only the clipping clasp mechanism as described above. Maier Decl. Ex. 1 at 6;23-25.

It appears from the Ottah Memorandum that Ottah has also acquired an Australian patent for his invention, separate from the '840 Patent.

### b. The Accused Product

The Accused Product is one of several models of laptop docking stations manufactured by FMT. FMT generally sells these products to police forces, power companies, and other similarly situated customers, who install them in their automotive vehicles for mobile laptop use.

According to the depiction of the Accused Product provided by Ottah, the product consists generally of a variable top platform designed to hold a laptop computer; an adjustable, stanchion-like middle portion; and a mostly flat base with holes for drilling the device into the floor of a vehicle. The picture Ottah provides includes no clasp, and the Accused Product does not appear to be attachable other than by screwing it in to the vehicle base. Pl.'s 2d Amended Complaint (the "Complaint") at 7.[2]

On September 8, 2011, I denied FMT's motion to dismiss the Complaint. Granting Ottah significant leeway as a *pro se* litigant, I found that, while his claims were unlikely to succeed on the merits, he had pleaded them adequately. I also concluded that the claim limitations were

---

[1] The Ottah Memorandum lacks page numbers on some pages and repeats numbers on others. Therefore, for purposes of clarity, the Court in this opinion refers to the ECF pagination present on the Ottah Memorandum.
[2] The Complaint lacks page numbers. Therefore, for purposes of clarity, the Court in this opinion refers to the ECF pagination present on the complaint.

readily understandable and directed the parties to file summary judgment motions within sixty days. Decision and Order Denying Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, Dkt. No. 36, at 6 (Sept. 8, 2011). FMT now moves for summary judgment on the ground of noninfringement, arguing that the absence of a clasp and inability to attach and remove the Accused Product without tools render it fundamentally different from the '840 Patent.

## II. Discussion

### a. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court is required to view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586 (citations omitted). Rather, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

Whether there exists a disputed issue of material fact is a question within the province of the Court. Balderman v. U.S. Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989). The party moving for summary judgment, here, FMT, has the initial burden of showing that no such disputed issue of material fact exists. Celotex v. Catrett, 477 U.S. 317, 323 (1986). However, once the moving party has properly submitted its motion, the burden shifts to the nonmoving party, here, Ottah, to provide "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. The Court must then determine

5

"whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party." Id. at 250. If the Court determines that there is a material factual question which a reasonable jury could conceivably resolve in either direction, it must deny summary judgment; however, "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249 (internal citation omitted).

"Patent cases are amenable to summary judgment." AstraZenica AB v. Dr. Reddy's Labs., Ltd., 603 F. Supp. 2d 596, 602 (S.D.N.Y. 2009). Although patent infringement is generally a question of fact, SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985), a court may grant summary judgment if it concludes that no reasonable jury could find infringement. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39 n. 8 (1997).

### b. The Accused Product does not Literally Infringe the '840 Patent

It is abundantly clear that the Accused Product does not literally satisfy the claim of the '840 Patent, and thus does not literally infringe it.

An analysis of patent infringement proceeds in two steps. Dow Chem. Co. v. Sumitomo Chem. Co., 257 F.3d 1364, 1372 (Fed. Cir. 2001). The Court first must construe, as a matter of law, the claims of the patent at issue to determine their scope and meaning. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc). In cases where the patent at issue consists solely of "commonly understood words," construal requires merely applying the ordinary definitions of such words. Philips v. AWH Corp., 415 F.3d 1303, 1314. As noted above, the Court has already "examined the limitations set forth in the '840 Patent's claim,

6

and [found] them to be readily understandable." <u>Decision and Order Denying Defendant's</u> <u>Motion to Dismiss Plaintiff's Second Amended Complaint</u>, Dkt. No. 36, at 6 (Sept. 8, 2011).

Once the claims have been construed, the second step of the infringement analysis is to compare such claims to the allegedly infringing device in order to determine whether "every claim limitation, or its equivalent, is found in the accused device." <u>Roche Palo Alto LLC v.</u> <u>Apotex, Inc.</u>, 531 F.3d 1372, 1377 (Fed. Cir. 2008). Here, Plaintiff argues that "[the '840 Patent] is/was not limited in any form." Ottah Memorandum at 4. However, in patent law, the word "limitation" does not have its ordinary meaning. Rather, it is a term of art used to describe the scope of a patented invention. "[C]laims are composed of a number of limitations." <u>Perkin-Elmer</u> <u>Corp. v. Westinghouse Electric Corp.</u>, 822 F.2d 1528, 1533 n. 9 (1987). Every unique aspect, or each distinct piece, part, or mechanism of the invention, which distinguishes it from the prior art, is a limitation. "It is the *limitation* of a claim that counts in determining both validity and infringement, and a limitation may include descriptive terms." <u>Id.</u> (emphasis in original). Limitations serve to clarify exactly what the patent is, while also indicating to future inventors what it is not; they provide future inventors with sufficient detail about the exact scope of a patent so that those inventors may know how they can create new products without infringing. Thus, courts hold that a new invention which does not contain *each and every limitation*, or each and every part or aspect, of the original patent does not literally infringe that patent. <u>Laitram</u> <u>Corp. v. Rexnord, Inc.</u>, 939 F.2d 1533, 1535 (Fed. Cir. 1991); <u>V-Formation, Inc. v. Benetton</u> <u>Grp. SpA</u>, 401 F.3d 1307, 1312 (Fed. Cir. 2005) ("Literal infringement requires that each and every limitation set forth in a claim appear in an accused product.").

In the present case, the '840 Patent contains several limitations. For example, it includes a "book support platform comprising a front surface, a rear surface and a plurality of clamps,"

Maier Decl. Ex. 1 at 6;17-19. This indicates a limitation that any new product must have such a platform in order to infringe the '840 Patent. If a new product is otherwise similar to the '840 Patent but does not have this type of platform, it does not infringe. The '840 Patent also includes "an arm comprising a first end and a second end and a telescoping arrangement," id. at 6;27-28. This indicates a limitation that any new product must have such an arm to infringe the '840 Patent. Because a new product must contain "each and every limitation set forth in a claim," V-Formation Inc., 401 F.3d at 1312, for any new product to infringe the '840 Patent, the new product must contain *both* a book support platform *and* an arm. Any new product which does not contain *each* of these features does not infringe the '840 Patent.

The '840 Patent also includes the following limitation: "a clasp comprising a clip head, a clip body and a pair of resilient clip arms, the clip arms adjustably mounted on the clip head, the clip head attached to the clip body," Maier Decl. Ex. 1 at 6;23-25. As with the other limitations, for a new invention literally to infringe the '840 Patent, the new invention must include this clasp, *in addition* to all the other limitations. The Accused Product clearly does not include a clasp. See Complaint at 7. Ottah does not argue otherwise, and there can be no genuine dispute as to this fact. Therefore, the Accused Product does not include "each and every limitation set forth in" the '840 Patent, and, as a matter of law, does not literally infringe the '840 Patent.

### c. The Accused Product does not Infringe the '840 Patent Under the Doctrine of Equivalents

The doctrine of equivalents provides that "a product that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997) (quoting

8

<u>Graver Tank & Mfg. Co. v. Linde Air Prods. Co.</u>, 339 U.S. 605, 609 (1950)). Courts invoke the doctrine "to make it impossible for 'the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law.'" <u>Radio Steel & Mfg. Co. v. MTD Prods., Inc.</u>, 731 F.2d 840, 847 (Fed. Cir. 1984) (quoting <u>Graver Tank & Mfg. Co.</u>, 339 U.S. at 607). "Application of the doctrine of equivalents is the exception, however, not the rule." <u>London v. Carson Pirie Scott & Co.</u>, 946 F.2d 1534, 1538 (Fed. Cir. 1991), meaning that courts cannot liberally and freely use it to find infringement, but rather must do so only when necessary.

In order to infringe under the doctrine of equivalents, an accused product must contain elements equivalent to each claimed element of the patented invention. <u>Warner-Jenkinson Co.</u>, 520 U.S. at 39-40. Although Ottah does not expressly invoke this doctrine in his memorandum opposing summary judgment, he notes the ability of the "clasp" element of the '840 Patent to be placed at the bottom of his invention and installed in the floor of a vehicle using tools, a feature which would seem to render the '840 Patent more similar to the Accused Product than the language of the claim itself suggests. Ottah Memorandum at 25. It seems that he is, albeit not in so many words, arguing that the doctrine of equivalents should be applied to deem the base of the Accused Product equivalent to the clasp on the '840 Patent which was not literally infringed.

This claim, however, must fail. The basic test for the doctrine of equivalents is, "Does the accused product or process contain elements identical or equivalent to each claimed element in the patented invention?" <u>Warner-Jenkinson Co.</u>, 520 U.S. at 40. The Federal Circuit uses two similar and related tests as appropriate to answer this question: the insubstantial differences test, under which, "An element in the accused device is equivalent to a claim limitation if the only

9

differences between the two are insubstantial," and the function-way-result test, under which there is equivalence if the element of the accused device "performs substantially the same function in substantially the same way to obtain substantially the same result" as the element of the patented invention. Voda v. Cordis Corp., 536 F.3d 1311, 1326 (Fed. Cir. 2008). The court must apply this set of tests to every element of the patented product. To permit an overall finding of equivalence, either each literal element or its equivalent must appear in the accused product. Warner-Jenkinson Co., 520 U.S. at 29. Here, FMT argues that its attachment process is not equivalent to the '840 Patent's clasp mechanism, and utilizing either test mandates precisely that conclusion.

Any similarities between the '840 Patent's clasp mechanism and the Accused Product are not sufficient to render the "differences . . . insubstantial." Ottah emphasizes that his product *can* be configured in such a way that it can be attached to the floor of a motor vehicle with tools, like the Accused Product. Ottah Memorandum at 25. However, one of the *key* features of Ottah's product is its ability to be attached and detached quickly and simply to a personal mobile vehicle, without tools. Maier Decl. Ex. 1 at 1;6-9 ("removable book holder assembly for use by a person in a protective or mobile structure such as a car seat, wheelchair, walker, or stroller"); id. at 1;55-58 ("The prior art does not accommodate easy and quick attaching the book support onto a structure for mobile use. Thus there is a need for an improved Book Holder that is quickly and easily clipped to a mobile vehicle"); id. at 1;64-67 ("It is an object of the present invention to provide a book holder that can be easily and removably attached to and removed from a bar or portion of the mobile vehicle without tools"). Thus, it is clear that a device, such as the Accused Product, which does not include this vital feature of the '840 Patent, does not merely differ insubstantially from it.

10

Similarly, the quick and tool-free attachability and removability of Ottah's invention bar a finding of equivalence under the function-way-result test. Even accepting that both products provide users with a means to hold and display some sort of media hands-free and while on the move, the differences between them are significant enough that they do not meet the level of "substantially the same" along the three criteria. The ability to attach and remove quickly, which, as discussed above, is a primary feature of the '840 Patent, is not "substantially the same" as drilling into floorboards. Although Ottah's invention may be capable of attachment to the floor of a vehicle with tools, the products at issue nonetheless do not function "substantially the same" or act in "substantially the same" way to achieve "substantially the same" result because the Accused Product lacks the fundamental feature of the '840 Patent which gives it the ability, even if this is not its only configuration, to be attached quickly, easily, and without tools. Therefore, "no reasonable jury could determine [these] two elements to be equivalent, [and the Court is] obligated to grant . . . summary judgment." Warner-Jenkinson Co., 520 U.S. at 39 n. 8.

### d. Prosecution History Estoppel Bars Ottah from Expanding the Scope of the '840 Patent to Cover the Accused Product's Attachment Mechanism

Even were the Court to find the Accused Product's attachment mechanism similar in function to the '840 Patent's clasp, the doctrine of prosecution history estoppel would bar Ottah from claiming that the Accused Product infringed the '840 Patent under the doctrine of equivalents. Contrary to Ottah's concerns, "estoppel" does not denote any form of illegal conduct. Rather, it generally means that one may not do something because to do it would be inconsistent with a position or action the person has already taken.[3] Here, prosecution history

---

[3] Black's Law Dictionary defines "estoppel" as "a bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true." Black's Law Dictionary 629 (9th ed. 2009).

11

estoppel does not de-legitimize the '840 Patent in any way, as Ottah fears. Rather, prosecution history "Estoppel is a 'rule of patent construction' that ensures that claims are interpreted by reference to those 'that have been cancelled or rejected.'" Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 733 (2002) (quoting Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220 (1940)). The doctrine of prosecution history estoppel bars a patent holder from asserting in an infringement proceeding that his or her patent covers an *extension* or similar iteration of the patented product if he or she originally sought to patent such extension or iteration but abandoned such pursuit during the prosecution process. Id. at 733-34. In other words, if, while attempting to obtain a patent, an inventor originally seeks to have the patent include feature X, but, during the patent application process, deletes references to feature X from the written application, he or she may not later claim that feature X is covered by the patent and allege that a product including feature X infringes the patent. Id. The patent itself is not harmed; rather, it cannot be extended beyond its specific words.

This principle bars Ottah from using the doctrine of equivalents to argue that the Accused Product infringes the '840 Patent. In response to comments from the USPTO, Ottah amended the original incarnation of the '840 Patent to avoid the ambit of certain earlier patents. In so doing, he explicitly narrowed its scope, particularly as regards its attachment. Specifically, he argued to the USPTO that, among other things, "the use of adjustable, resilient clip arms on the clasp for clasping the book holder to the movable vehicle providing quick removal and attachment without tools . . . is not obvious in light of the prior art." Maier Decl. Ex. 4 at 22. Ottah may not rely and focus on the easy removability of his invention without tools in order to acquire the '840 Patent and then expand the scope of that patent later by equating that same feature to other more difficult and tool-requiring methods of attachment. In other words, only a product which can be

12

attached quickly, removably, and without tools, in a manner akin to that of the '840 Patent, can infringe that patent. As a matter of law, any product lacking this feature cannot infringe the '840 Patent, even if Ottah's product can be configured in other ways. Thus, because the Accused Product can *only* be attached with tools, and lacks any clipping or other quick and tool-free attachment capability, Ottah may not argue that it infringes the '840 Patent, and the Court must grant summary judgment in favor of FMT.

### e. The Parties' Other Arguments

Each party makes several other arguments, certain of which warrant mention but do not require detailed exposition.

First, Ottah refers to various language in the '840 Patent specification and to the drawings accompanying his application, which he appears to believe were also claimed. Under U.S. patent law, the specification portion and the drawings of a patent serve only as a description of the invention, not the official claim for legal purposes. Rather, only the "claim" section is the legally binding statement of the patent. Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc) ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims."). Accordingly, Ottah's patent does not extend to the alternative descriptions in the specification and the drawings attached to the '840 Patent. Any language in the specification or depiction in the drawings which suggests that the product described in the '840 Patent encompasses more than the plain language of the "claim" portion indicates, therefore, is not controlling for purposes of an infringement claim. The '840 Patent is limited to the aspects described in the "claim" section, which require the "clasp" and "removabl[e] attach[ment]" discussed above.

13

Similarly, only the claim section of a patent on file with the USPTO, rather than a foreign patent, constitutes the applicable language of a patent for infringement purposes. Brown v. Duchesne, 60 U.S. 183, 195 (1857) (patent law "is domestic in its character, and necessarily confined within the limits of the United States . . . . [Patent laws] do not, and were not intended to, operate beyond the limits of the United States; and as the patentee's right of property and exclusive use is derived from them, they cannot extend beyond the limits to which the law itself is confined."). See also Voda v. Cordis Corp., 476 F.3d 887, 897-900 (Fed. Cir. 2007) (for federal courts to exercise supplemental jurisdiction over matters involving international patents is generally inappropriate in light of treaties governing international patent law and concerns of "the values of judicial economy, convenience, fairness, and comity."). The description of a product from foreign patents can thus be given no moment in a United States court. In other words, references to Ottah's Australian patent for his invention may not be used to fix the scope of his U.S. patent. Indeed, to consider the Australian patent, a court would need to find it virtually indistinguishable from the '840 Patent, which would in actuality hinder Ottah's attempt to use the Australian patent to expand and explicate the scope of the '840 Patent.

Ottah also argues that his product is designed "to provide a holder of books, computers, electronics, phones, cameras etc.," and that the '840 Patent covers use with technological advancements such as "iPad, smart HDTV, [and] smart phones," Ottah Memorandum at 22. It appears that this is intended to refute the point, which FMT does not stress, that the '840 Patent is limited to devices for holding books, whereas the Accused Product is designed to hold a laptop computer. For the reasons outlined above relating to the critical nature of the words of the "claim" section of a patent, which in this case speaks at length about "books" but does not mention any other medium, Maier Decl. Ex. 1 at 6;14-38, it is likely that this argument would be

14

a difficult one for Ottah. However, the Court need not reach this point, because, as discussed above, infringement requires all elements of the invention to appear in the accused product, and the absence of a tool-free clasp mechanism is enough to warrant summary judgment in this case.

Finally, FMT argues that Ottah's description of his product's ability to attach to the floor of a vehicle constitutes a re-worded but materially indistinguishable re-rendering of the clasp feature of the '840 Patent, rather than an actual base similar to that of the Accused Product. Defendant's Reply Memorandum in Support of Defendant's Motion for Summary Judgment (December 2, 2011) at 5-6. Because the Court has determined that, even if Ottah's invention can be tailored so as to serve as a base akin to that of the Accused Product, the language of the claim does not lend itself to infringement on this basis, there is no need to parse this argument.

## CONCLUSION

For the reasons discussed above, FMT's motion for summary judgment is granted.

The Clerk of the Court is directed to enter judgment dismissing the action and remove the motion at Docket No. 42 from the Court's list of outstanding motions.

Dated: February 17, 2012

_____

U.S.D.J.

[BY FIRST-CLASS MAIL TO ALL PARTIES]

15